UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | CASE NO.: 4:18-cv-00866 |
| Plaintiff, | |
| v. | JUDGE JOHN R. ADAMS |
| LAUREN PATERSON, | **MEMORANDUM OF OPINION AND ORDER** |
| Defendant. | (Resolves Docs. 30, 33) |

Pending before this Court are competing motions for summary judgment along with appropriately filed oppositions and replies in support. (Pl.'s Mot. for Summ. J., ECF No. 33; Def.'s Opp'n to Pl.'s Mot. for Summ. J., ECF No. 36; Reply in Supp. of Pl.'s Mot. for Summ. J., ECF No. 40. Def.'s Mot. for Partial Summ. J., ECF No. 30; Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J., ECF No. 34; Reply in Supp. of Def.'s Mot. for Partial Summ. J., ECF No. 39.)

The question before this Court is whether the Uninsured/Underinsured Motorists Coverage endorsement of an insurance policy issued by Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union") provides insurance coverage to Defendant Lauren Paterson ("Paterson") for an automobile accident. For the foregoing reasons, as fully analyzed herein, Paterson's Motion for Partial Summary Judgment is GRANTED and, therefore, National Union's Motion for Summary Judgment is DENIED. Accordingly, this Court specifically holds that at the time of the automobile accident, the automobile Paterson was driving was a "covered 'auto'" pursuant to the term descriptions and relevant endorsements contained in the insurance policy

issued by National Union. Therefore, Paterson is entitled to the insurance coverage provided by the Uninsured/Underinsured Motorists Coverage endorsement of the policy.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are undisputed. National Union issued an automobile insurance policy, policy number CA 349-35-26 (hereinafter "Policy"), to Dynamic Structures, Inc. d/b/a Clear Creek Oil Fields Solutions ("Dynamic Structures") which was effective July 1, 2017 through July 1, 2018. (Compl. ¶ 20, ECF No. 1; Answer ¶ 7, ECF No. 9. Countercl. ¶ 11, ECF No. 9; Answer to Countercl. ¶ 11, ECF No. 11. *See also*, Certified Policy 2, ECF No. 29-1.) The Policy provides Uninsured/Underinsured Motorists Coverage through an endorsement in the amount of one million dollars ($1,000,000). (Certified Policy 55, ECF No. 29-1.)

On September 15, 2017, Paterson was an employee of Dynamic Structures. (Compl. ¶ 8, ECF No. 1; Answer ¶ 5, ECF No. 9. Countercl. ¶¶ 2, 11, ECF No. 9.) As an employee of Dynamic Structures, Paterson worked at the Apex worksite. (Beckham Dep. 26:9-19, ECF No. 28; Paterson Aff. ¶ 4, ECF No. 30-1; Beckham Decl. ¶ 9, ECF No. 33-2; Duncan Decl. ¶ 3, ECF No. 33-3.) For each shift worked at the Apex worksite, Dynamic Structures' employees were paid for one hour of travel time to the Apex worksite, and one hour of travel time from the Apex worksite. (Beckham Decl. ¶¶ 5, 7, ECF No. 33-2; Duncan Decl. ¶ 11, ECF No. 33-3.) Dynamic Structures provided transportation for its employees to and from its primary business location and the Apex worksite each workday. (Beckham Dep. 10:12-18, 28:15-19, 29:8-13, ECF No. 28; Beckham Decl. ¶ 6, ECF No. 33-2; Duncan Decl. ¶ 4, ECF No. 33-3.) However, on September 15, 2017, Paterson drove her own automobile to the Apex worksite, and had Dynamic Structures' permission to do so. (Paterson Aff. ¶ 9, ECF No. 30-1; Beckham Decl. ¶ 11, ECF No. 33-2; Duncan Decl. ¶¶ 6-7, ECF No. 33-3.) Even though Paterson drove her own automobile to work, she was still compensated for one

hour of travel time to the Apex worksite, and one hour of travel time from the Apex worksite. (Beckham Decl. ¶¶ 7, 11, ECF No. 33-2; Duncan Decl. ¶ 11, ECF No. 33-3.)

On September 15, 2017, Paterson completed her work at the Apex worksite at 7 P.M., at which time she began driving her own automobile from the Apex worksite to Dynamic Structures' primary business location to submit work-related paperwork. (Paterson Aff. ¶¶ 6, 13, 16, ECF No. 30-1.) At approximately 7:50 P.M. on September 15, 2017, Paterson, while operating an automobile that she owned and travelling eastbound on State Route 517 in Elkrun Township, Ohio, was involved in an automobile accident. (Compl. ¶¶ 7, 11, 14, ECF No. 1; Answer ¶ 5, ECF No. 9. Countercl. ¶¶ 1, 4, ECF No. 9; Answer to Countercl. ¶¶ 1, 4, ECF No. 11.) Both Paterson and the driver of the other vehicle involved in the automobile accident were insured. (Compl. ¶¶ 15-16, ECF No. 1; Answer ¶ 5, ECF No. 9. Countercl. ¶¶ 12-13, ECF No. 9; Answer to Countercl. ¶¶ 12-13, ECF No. 11.)

In order to compensate her for damages sustained as a result of the automobile accident, which were not already covered by other applicable insurance policies, Paterson seeks insurance coverage through the Uninsured/Underinsured Motorists Coverage endorsement of the Policy. (Compl. ¶¶ 12-13, 17, 21, ECF No. 1; Answer ¶ 5, ECF No. 9. Countercl. ¶¶ 14-17, ECF No. 9; Answer to Countercl. ¶¶ 14, 16, 17, ECF No. 11.) In addition, Paterson applied for workers' compensation benefits in connection with the automobile accident. (Compl. ¶ 18, ECF No. 1; Answer ¶ 5, ECF No. 9. Countercl. ¶ 8, ECF No. 9; Answer to Countercl. ¶¶ 2, 8, ECF No. 11.) The Ohio Bureau of Workers' Compensation ("Ohio BWC") granted Paterson's application for benefits. (Compl. ¶ 19, ECF No. 1; Answer ¶ 5, ECF No. 9. Countercl. ¶ 8, ECF No. 9; Answer to Countercl. ¶¶ 2, 8, ECF No. 11.) In so doing, the Ohio BWC concluded that Paterson was acting in the course and scope of her employment with Dynamic Structures at the time of the automobile accident. (Compl. ¶ 19,

ECF No. 1; Answer ¶ 5, ECF No. 9. Countercl. ¶ 8, ECF No. 9; Answer to Countercl. ¶ 2, ECF No. 11.)

Accordingly, the portions of the Policy relevant to this discussion are as follows. The Uninsured/Underinsured Motorists Coverage endorsement of the Policy specifically provides that National Union "will pay those sums, and only those sums, that an 'employee' is 'legally entitled to recover' as compensatory damages because of 'bodily injury' sustained in an 'accident' with an 'uninsured motor vehicle' while such 'employee' was 'occupying' a covered 'auto' in the 'course and scope of employment' with [Dynamic Structures]." (Certified Policy 56, ECF No. 29-1.) While the Policy provides definitions for each term, the only language at issue between the parties is "covered 'auto'".

Pursuant to the Policy, "covered 'autos'" – i.e. those to which the Uninsured/Underinsured Motorists Coverage endorsement of the Policy applies – are described as "[o]nly those 'autos' [Dynamic Structures] own[s] . . .. This includes those 'autos' [Dynamic Structures] acquire[s] ownership of after the policy begins." (*Id.* at 3, 18, 55.) A general endorsement to the Policy, which also applies to the Uninsured/Underinsured Motorists Coverage endorsement of the Policy, entitled Employee as Lessor, expands the description of "covered 'auto'" to also include "[a]ny employee's auto that is hired, loaned or leased by [Dynamic Structures]." (*Id.* at 37.) In whole, the Policy provides that "covered 'autos'" are those that Dynamic Structures owns, and the endorsement clarifies that any employee's automobile that is hired, leased, or borrowed by Dynamic Structures is also considered a "covered 'auto'" that Dynamic Structures owns. (*Id.*) As defined by the Policy, an "auto" is "a land motor vehicle . . . designed for travel on public roads . . .". (*Id.* at 26.)

Through a complaint and counterclaim for declaratory judgment, each party requested that this Court determine the rights and obligations of the parties pursuant to the Policy, where National Union requested this Court determine it is not obligated to provide Paterson Uninsured/Underinsured Motorists Coverage for the September 15, 2017 automobile accident, while Paterson requested that this Court conclude National Union is, in fact, required to do so. (Compl. 10, ECF No. 1; Countercl. 7, ECF No. 9.) Ultimately, each party advanced its arguments regarding the application of the Policy to the September 15, 2017 automobile accident in the form of competing motions for summary judgment, along with appropriately filed oppositions and replies in support. (Pl.'s Mot. for Summ. J., ECF No. 33; Def.'s Opp'n to Pl.'s Mot. for Summ. J., ECF No. 36; Reply in Supp. of Pl.'s Mot. for Summ. J., ECF No. 40. Def.'s Mot. for Partial Summ. J., ECF No. 30; Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J., ECF No. 34; Reply in Supp. of Def.'s Mot. for Partial Summ. J., ECF No. 39.)

After considering the parties' arguments, the narrow issue for this Court to decide is whether Paterson's automobile was a "covered 'auto'" pursuant to the relevant endorsements and term descriptions contained in the Policy issued by National Union, which was effective on the date of the automobile accident. This Court concludes, in conjunction with the following analysis, that Paterson's automobile was a "covered 'auto'" pursuant to the Policy, and, therefore, Paterson is entitled to the insurance coverage provided for by the Uninsured/Underinsured Motorists Coverage endorsement of the Policy issued by National Union.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Pursuant to the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Keeping in mind, of course, that a court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). When reviewing the motion for summary judgment, "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (internal quotation marks omitted)).

Once the movant's burden is met, the burden shifts to the non-moving party to "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992). Of note, however, is "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (internal quotation marks omitted)). Per Federal Rule of Civil Procedure 56(a), the summary judgment analysis applies only to "material" facts under "genuine" dispute. Fed. R. Civ. P. 56(a).

Material facts are those "that might affect the outcome of the suit under the governing law," where other irrelevant or unnecessary factual disputes do not affect the summary judgment analysis. *Anderson*, 477 U.S. at 248. Additionally, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. See also Matsushita*, 475

U.S. at 586-87 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). When making these determinations, this Court cannot engage in any "jury functions such as making credibility determinations and weighing the evidence." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson*, 477 U.S. at 255 (internal quotation marks omitted)). Accordingly, "the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 243 (syllabus).

### B. Application of Ohio Law

This Court properly has subject matter jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332(a) as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. (Compl. ¶¶ 1-3, ECF No. 1; Answer ¶¶ 2-3, ECF No. 9.) When an insurance contract dispute predicated upon diversity jurisdiction is before this Court, the substantive law of the forum state, the state in which the lawsuit was filed, must be applied. *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). More specifically, "[a] federal court must follow the decisions of the state's highest court when that court has addressed the relevant issue." *Talley*, 223 F.3d at 326 (citing *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999)). Accordingly, this Court must follow the decisions of the Supreme Court of Ohio when analyzing the insurance contract dispute presented in this case.

For issues that the Supreme Court of Ohio has not yet addressed, this Court must "anticipate how that court would rule." *Morgenstern v. Nationwide Agribusiness Ins. Co.*, 78 F. App'x 485, 489 (6th Cir. 2003) (quoting *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001)

(internal quotation marks omitted)). In so doing, this Court "must consider decisions of a state's intermediate appellate courts unless we are 'convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Morgenstern*, 78 F. App'x at 489 (quoting *West v. AT&T Co.*, 311 U.S. 223, 237 (1940)).

### C. Legal Interpretation of the Policy Language Pursuant to Ohio Law

With respect to the insurance contract dispute at issue in this case, the following principles guide the analysis under Ohio law. The first is that "[t]he interpretation of an insurance contract involves a question of law to be decided by a judge." *Leber v. Smith*, 70 Ohio St.3d 548, 553, 639 N.E.2d 1159 (1994). When a court interprets the language of an insurance contract, it is required "to give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11 (citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999); *Employers' Liab. Assur. Corp. v. Roehm*, 99 Ohio St. 343, 124 N.E. 223 (1919), syllabus). In so doing, the court is required to "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Galatis* at ¶ 11 (citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus). Therefore, "[w]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Galatis* at ¶ 11 (citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus).

Second, with respect to the contract language specifically, the "plain and ordinary meaning of the language used in the policy" is applied, "unless another meaning is clearly apparent from the contents of the policy." *Galatis* at ¶ 11 (citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus). This means that "words not defined

within an insurance policy must be given their natural and commonly accepted meaning." *Fed. Ins. Co. v. Exec. Coach Luxury Travel, Inc.*, 128 Ohio St.3d 331, 2010-Ohio-6300, 944 N.E.2d 215, ¶ 3 (citing *Gomolka v. State Auto Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-68, 436 N.E.2d 1347 (1982)).

Finally, any ambiguity contained in a policy is to be construed in favor of the insured, not the insurer, so long as this does not provide an unreasonable interpretation of the policy at issue. *See id.* at ¶ 8 (citing *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko*, 72 Ohio St.3d 120, 122, 647 N.E.2d 1358 (1995)). *See also Galatis* at ¶¶ 13-14 (citing *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus; *Morfoot v. Stake*, 174 Ohio St. 506, 190 N.E.2d 573 (1963), paragraph one of the syllabus). Accordingly, the intent of National Union and Dynamic Structures, the parties to the insurance contract, is reflected by the language utilized in the Policy. If the Policy remains ambiguous after the policy's undefined terms are properly defined utilizing their plan and ordinary meanings, the ambiguity is construed in favor of Paterson, not National Union, so long as this interpretation is not an unreasonable interpretation of the Policy. *See Blue Cross & Blue Shield Mut. v. Hrenko*, 72 Ohio St.3d 120, 122, 647 N.E.2d 1358 (1995) (explaining that "words in a policy must be given their plain and ordinary meaning, and only where a contract of insurance is ambiguous and therefore susceptible to more than one meaning must the policy language be liberally construed in favor of the claimant who seeks coverage") (quoting *Burris v. Grange Mut. Cos.*, 46 Ohio St.3d 84, 89, 545 N.E.2d 83 (1989) (internal quotation marks omitted)). *See also Fed. Ins. Co. v. Exec. Coach Luxury Travel, Inc.*, 128 Ohio St.3d 331, 2010-Ohio-6300, 944 N.E.2d 215, ¶ 8 (confirming that insurance policies are liberally construed in favor of the insured, not necessarily the policy holder, particularly when the policy, as written, defines "insured" individuals as those who were not a party to the insurance contract).

Considering the Policy as a whole, it is clear that National Union and Dynamic Structures intended, as reflected by the language contained within the four corners of the policy, to provide Uninsured/Underinsured Motorists Coverage to automobiles that Dynamic Structures owns, which necessarily includes, by virtue of the Employee as Lessor endorsement: (1) automobiles hired by Dynamic Structures from an "employee"; (2) automobiles borrowed by Dynamic Structures from an "employee"; (3) automobiles leased by Dynamic Structures from an "employee". (Certified Policy 3, 18-28, 37, 55-60, ECF No. 29-1.)

As an initial matter, Paterson meets the definition of "employee" as set forth in the Policy. As defined by the Uninsured/Underinsured Motorists Coverage endorsement, an "employee" is one "who is a full-time 'employee' of [Dynamic Structures], who has in fact applied for and received benefits under applicable Worker's Compensation law for the injuries for which a claim is being made under this Endorsement." (Certified Policy 59, ECF No. 29-1.) Paterson was a full-time employee of Dynamic Structures on September 15, 2017 and subsequent to the automobile accident, she applied for and was awarded benefits under Ohio's Worker's Compensation laws. (Compl. ¶¶ 8, 18, 19, ECF No. 1; Answer ¶ 5, ECF No. 9. Countercl. ¶¶ 2, 8, 11, ECF No. 9; Answer to Countercl. ¶¶ 2, 8, 11, ECF No. 11.) Therefore, the only question remaining is whether Dynamic Structures owned the automobile involved in the September 15, 2017 accident by virtue of hiring Paterson's automobile, borrowing Paterson's automobile, or leasing Paterson's automobile, as contemplated by the Employee as Lessor endorsement, thereby entitling Paterson to Uninsured/Underinsured Motorists Coverage of the Policy.

   1. *"Hired By" Clause*

Once again, for clarity, the Uninsured/Underinsured Motorists Coverage endorsement modifies the Policy to provide insurance coverage to the employees of Dynamic Structures who

suffer damages as a result of automobile accidents with uninsured/underinsured motorists so long as the Dynamic Structures employee is occupying a "covered 'auto'", as described by the Policy, at the time of the automobile accident. (Certified Policy 55-60, ECF No. 29-1.) The Employee as Lessor endorsement provides that "covered 'autos'" – i.e. those automobiles that Dynamic Structures owns pursuant to the descriptions contained in the Policy – include any employee automobile hired by Dynamic Structures. (*Id.* at 37.) Neither the Policy, the Uninsured/Underinsured Motorists Coverage endorsement, nor the Employee as Lessor endorsement define "hire". (*See id.* at 3, 18-28, 37, 55-60.)

Therefore, this Court looks first to the Supreme Court of Ohio for a definition and application of the term "hire" in the insurance contract context. Accordingly, the Supreme Court of Ohio has succinctly concluded that the term "hire" in an insurance contract means "to procure the temporary use of property, usu. at a set price." *Fed. Ins. Co. v. Exec. Coach Luxury Travel, Inc.*, 128 Ohio St.3d 331, 2010-Ohio-6300, 944 N.E.2d 215, ¶ 12 (quoting *Hire*, Black's Law Dictionary (9th ed. 2009) (internal quotation marks omitted)). In *Fed. Ins. Co.*, a university contracted with a charter bus company for services and the question before the court was whether the driver of the charter bus was an insured individual pursuant to the language of the university's insurance policy. *Fed. Ins. Co.* at ¶¶ 1-2. The university's insurance policy provided that an "insured" was "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow" but failed to define the term "hire". *Id.* at ¶¶ 3, 5. In providing a definition and analysis for the term "hire", the Supreme Court of Ohio explicitly discarded definitions of "hire" that require control and possession and, instead, determined that the term "hire" has a "common and ordinary" definition that necessitated the conclusion that the university hired the charter bus when it "procured the use of the bus in

exchange for payment," thereby deciding that the charter bus driver was an insured pursuant to the language of the university's insurance policy. *Id.* at ¶¶ 9-13.

Given this framework, this Court concludes that Paterson's automobile was hired by Dynamic Structures at the time of the automobile accident on September 15, 2017. The parties spend considerable time discussing a one-time payment made to Paterson and whether that payment was a mileage reimbursement or payment for hours worked and how that difference affects the analysis. This Court finds the focus on that payment misplaced. The undisputed facts are that Paterson was paid her hourly rate by Dynamic Structures for one hour of travel time after each shift. On September 15, 2017, immediately after her shift ended, Paterson drove her own automobile from the Apex worksite to Dynamic Structures' primary business location to submit work-related paperwork and was involved in the automobile accident. Whether Dynamic Structures *required* her to submit her paperwork immediately after her shift is immaterial – the undisputed fact remains that Paterson was travelling from the Apex worksite to Dynamic Structures' primary business location for work purposes and the automobile accident occurred during the one-hour travel period for which she was paid. Additionally, although it is not dispositive, it is instructive that the Ohio BWC found that Paterson was acting in the course and scope of her employment with Dynamic Structures at the time of the automobile accident.

Because control and possession are not required to find that Dynamic Structures hired Paterson's automobile, this Court can reach only one conclusion. Paterson was completing a work-related activity and was being paid by Dynamic Structures at the time of the automobile accident. Therefore, at the time of the automobile accident, Dynamic Structures had procured the use of Paterson's automobile for a set price. This means that Paterson's automobile was hired by

Dynamic Structures at the time of the automobile accident and Paterson is entitled to the Uninsured/Underinsured Motorists Coverage of the Policy.

    2. *"Loaned By" and "Leased By" Clauses*

Because this Court finds that Paterson's automobile was a "covered 'auto'" at the time of the automobile accident pursuant to the descriptions contained in the Policy and the relevant Ohio case law with respect to the term "hire", this Court will not address the arguments regarding the "loaned by" and "leased by" clauses contained in the Employee as Lessor endorsement.

### III. CONCLUSION

For the foregoing reasons, Paterson's Motion for Partial Summary Judgment is GRANTED and National Union's Motion for Summary Judgment is DENIED. Accordingly, this Court holds that Paterson's automobile, which was involved in the September 15, 2017 automobile accident, was a "covered 'auto'" pursuant to the descriptions of the Policy, and, therefore, Paterson is entitled to the Uninsured/Underinsured Motorists Coverage provided for in the Policy.

IT IS SO ORDERED.

DATE: October 24, 2019                 /s/ John R. Adams
                                                              Judge John R. Adams
                                                              UNITED STATES DISTRICT COURT